In the Matter of MAX ANDER, an Attorney, Respondent. CO-ORDI-
NATING COMMITTEE ON DISCIPLINE OF THE ASSOCIATION OF THE
BAR OF THE CITY OF NEW YORK, THE NEW YORK COUNTY
LAWYERS' ASSOCIATION AND THE BRONX COUNTY BAR ASSOCIA-
TION, Petitioner.

First Department, October 29, 1964.

*Henry Weiner (Joseph B. Castleman* with him on the brief),
attorney for petitioner.

*Arnold Davis* for respondent.

*Per Curiam.* Respondent was admitted to the Bar in the
Second Department in 1940. Since 1948 he has been in prac-
tice for himself. It appears that the bulk of his practice arises
from claims for personal injuries. This proceeding against
him for disciplinary action was instituted by the Co-ordinating
Committee of the Association of the Bar and the Bronx County
Bar Association. There were nine charges of misconduct. Of
these, five charges involve infractions of the rules regulating
the handling of negligence cases, such as failure to file closing
statements, failure to file statements of retainer and the like.
The Referee found these charges to be sustained but that, due
mainly to the fact that these were isolated or rare instances in

an extensive practice, they established inadvertence or neglect rather than any intention to avoid or disobey the rules. Were these the only charges, and were there no further instances of infraction except those established, we would be inclined to a similar view, with the consequence that no disciplinary action would be called for. However, it must be kept in mind that these regulations are designed in part to provide a convenient record of the activities of attorneys, and where they are not followed the way is left open to conceal the practices that the forms would disclose. And where other misconduct has been established, the innocent character of these derelictions is seriously challenged.

The remaining charges are: submitting false medical bills to insurance carriers; serving a false bill of particulars; paying a percentage of respondent's fees to lay adjusters; and commingling of funds. The first two of these charges were amply proved. The third, dealing with lay adjusters and paying them a percentage of respondent's fees, was admitted. The first two are serious charges in that they involve deception and attempts to obtain a result not warranted by the facts. They have resulted in substantial sanctions (*Matter of Shields,* 16 A D 2d 50; *Matter of Gladstone,* 16 A D 2d 512). Dealing with lay adjusters and paying them a fee based on a percentage of the attorney's own fee is likewise a serious infraction. Respondent's claim that he was unaware that any wrongdoing was involved is hard to credit, not only in the light of canon 34 of the Canons of Professional Ethics, but in view of the expressed condemnation of the specific practice by this and other courts (*Matter of Gladstone, supra; Matter of Pincus,* 20 A D 2d 655). We take this occasion to point out again that no matter how widespread this practice is claimed to be, it will not be tolerated.

As to the charge of commingling funds, what was established was that respondent failed to maintain any special account. However, it was his regular custom upon receipt of a check from an insurance carrier to draw his own check for the client's share and deliver it before depositing the carrier's check in his own account. No client suffered any loss on account of this method. While the possibility of loss would militate against our approval of this practice, we would not be inclined in this case to impose any sanction for this departure from the letter of the regulations.

It will thus be seen that respondent has not been remiss to his clients in his representation of them. In fact, his breaches of ethics result from the opposite attitude — he has been overzealous in his efforts on their behalf to the unwarranted extent

16

that he has made serious departures from ethical conduct on their behalf. Where this results in deliberate falsification for the purpose of obtaining more than the client is entitled to, the seriousness of the charge is not lessened because it was done to further a client's interests. Giving effect to all that was established in the record, we conclude that, while it has not been shown that respondent has demonstrated unfitness to remain a member of the Bar, to impress the gravity of his breaches of ethics both on himself and as an example to others, suspension from practice is required.

Respondent should be suspended from practice for a period of three years.

BREITEL, J. P., VALENTE, McNALLY, EAGER and STEUER, JJ., concur.

Respondent suspended for a period of three years.